**NOT FOR PUBLICATION**                                    **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAYLE MEADOWS, : | |
| : | |
| Plaintiff, : | **OPINION** |
| : | |
| v. : | Civ. No. 04-3979 (WHW) |
| : | |
| HUDSON COUNTY BOARD OF : | |
| ELECTIONS and MARIE BORACE, : | |
| SUPERINTENDENT OF ELECTIONS, : | |
| HUDSON COUNTY, : | |
| : | |
| Defendants. : | |
| : | |

**<u>Walls, Senior District Judge</u>**

Plaintiff Gayle Meadows ("plaintiff") moves to amend her complaint pursuant to Fed. R. Civ. P. 15(a), and moves for partial summary judgment against defendants Hudson County Board of Elections and Marie Borace, Superintendent of Elections, Hudson County (together, the "defendants"), pursuant to Fed. R. Civ. P. 56. Defendants cross-move for summary judgment under Fed. R. Civ. P. 56. The motions are decided without oral argument pursuant to Fed. R. Civ. P. 78.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff has filed suit against defendants alleging that she was denied the ability to vote in the November 4, 2003 election because the polling place to which she had been assigned was not wheelchair-accessible. Plaintiff is a resident of Bayonne, New Jersey, and resides in Election District No. 11, Ward No. 2. (Meadows Cert. at ¶ 2.) It is undisputed that for the November 4, 2003 general election, she was assigned to the polling place located at St. Mary's Church Hall

NOT FOR PUBLICATION                                              CLOSED

(the "Church Hall"), located at 89 West 29th St. in Bayonne.  (Plaintiff's Statement of Undisputed

Material Facts ("PSUMF") at ¶ 2; Defendants' Response to Plaintiff's Statement of Undisputed

Material Facts ("DRSUMF") at ¶ 2.)  On November 4, 2003, she weighed approximately 250

lbs., and utilized a motorized wheelchair that weighed approximately 230 lbs.  (Meadows Cert. at

¶ 3.)

   There is no dispute that on election day in November of 2003, the Church Hall was not

wheelchair-accessible.  (PSUMF at ¶ 3; DRSUMF at ¶ 3.)  Nor is there any dispute that a sample

ballot mailed to voters assigned to the Church Hall for the November 4, 2003 election stated that

the Church Hall would be accessible for physically disabled voters.  (PSUMF at ¶ 4; DRSUMF at

¶ 4.)  Plaintiff claims she confirmed with the Bayonne City Clerk's office before the election that

the Church Hall would be wheelchair-accessible.  (Meadows Cert. at ¶ 4.)

   On election day, plaintiff allegedly went to the Church Hall to vote, but discovered that it

was impossible for her to access the interior of the polling place.  (Meadows Cert. at ¶ 6.)  She

then returned home and contacted the Board of Elections to inform them that she had been

unable to gain access to the Church Hall.  (Meadows Cert. at ¶ 7; DRSUMF at ¶ 7.)  Plaintiff was

told that she would need to get a court order to vote in person at the polling center via absentee

ballot.  (Defendants' Counterstatement of Undisputed Facts ("DCUF") at ¶16.)  She adds,

however, that by the time she had made her phone calls, it was 7:00 pm and she had been

exhausted from the day's events.  (Meadows Cert. at ¶ 7.)  Plaintiff says she was unable to vote

on November 4, 2003.  (Meadows Cert. at ¶ 8.)

NOT FOR PUBLICATION                                                    CLOSED

Defendants were aware before the election day that the Church Hall was not wheelchair-accessible.  (PSUMF at ¶ 8; DRSUMF at ¶ 8.)  On May 23, 2003, the Board of Elections submitted an accessibility waiver request to the Division of Elections for the Church Hall. (PSUMF at ¶ 9; DRSUMF at ¶ 9.)  In the waiver request, the Board of Elections did not answer the question "State your specific efforts to relocate this polling place to an accessible facility within the district."  (Latimer Cert. at Exh. H; PSUMF at ¶ 9; DRSUMF at ¶ 9.)  The waiver was granted on October 31, 2003, and in its letter granting the waiver, the Attorney General of New Jersey stated:

> For the attached polling places, your office has just recently determined that the enclosed polling places are inaccessible.  Further, after surveying the other polling sites, your office has represented that there are no other alternate accessible locations available and no locations that can be made temporarily accessible.
>
> While the lateness of these waiver requests is troubling, I am satisfied, based upon your count's representations and a review of your request, that the waiver requests for these polling places should be temporarily granted given the fact that the General Election is November 4, 2003.

(Latimer Cert. at Exh. H, J; PSUMF at ¶ 9; DRSUMF at ¶ 9.)

On August 19, 2004, plaintiff filed a complaint in this Court against defendants alleging: 1) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (first claim); violation of the Americans With Disabilities Act, 42 U.S.C. § 12132 (second claim); violation of Art. II, par. 3 of the New Jersey Constitution (third claim); violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(f) (fourth claim); violation of the New Jersey Election Statutes, N.J.S.A. 19:8-3.1 and N.J.A.C. 13:17-6.2 (fifth claim); and failure to certify a polling place as inaccessible, N.J.S.A. 19:8-3.4 (sixth claim).  On April 8, 2005, the Magistrate Judge issued an

NOT FOR PUBLICATION                                                    CLOSED

Order referring this matter to mediation and staying the litigation.  A mediation session was

conducted on June 17, 2005, at which time the parties were unable to resolve the matter.

Plaintiff now moves to amend the complaint to allege a claim for denial of equal

protection of the law in violation of the Fourteenth Amendment to the United States Constitution

(seventh claim).  Plaintiff also moves for summary judgment on the second claim and the

proposed seventh claim.  Defendants have moved for summary judgment on all of the plaintiff's

claims.

I.        **Plaintiff's Motion to Amend the Complaint**

          A.        <u>Standard</u>

          Pursuant to Fed. R. Civ. P. 15(a), once a response to a party's pleading is served, that

pleading may be amended only by leave of court or by written consent of the adverse party.  Rule

15(a) provides that leave to amend a pleading "shall be freely given when justice so requires."

Fed. R. Civ. P. 15(a).  A general presumption exists in favor of allowing a party to amend its

pleadings.  <u>Boileau v. Bethlehem Steel Corp.</u>, 730 F.2d 929, 938 (3d Cir.), cert. denied, 469 U.S.

871 (1984).  Leave to amend a complaint should be granted freely in the absence of undue delay

or bad faith on the part of the movant as long as the amendment would not be futile and the

opposing party would not suffer undue prejudice.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962);

<u>Adams v. Gould Inc.</u>, 739 F.2d 858, 864 (3d Cir.1984), cert. denied,  469 U.S. 1122 (1985).

          [A] refusal of a motion for leave to amend must be justified, <u>Davis</u>, 371 U.S. at 182, and

the Third Circuit has identified the following as permissible justifications: "(1) undue delay;  (2)

bad faith or dilatory motive; (3) undue prejudice to the opposition;  (4) repeated failures to

NOT FOR PUBLICATION                                                CLOSED

correct deficiencies with previous amendments; and (5) futility of the amendment." <u>Riley v.</u>

<u>Taylor</u>, 62 F.3d 86, 90 (3d Cir. 1995) (citations omitted).

      B.    <u>Analysis</u>

     Plaintiff has moved for leave to amend the complaint, pursuant to Fed. R. Civ. P. 15(a),

to add a claim for denial of equal protection of the law in violation of the Fourteenth Amendment

to the United States Constitution.  Defendants argue that the motion should be denied on the

grounds that adding this proposed claim would be futile.  Defendants cite <u>Belitskus v.</u>

<u>Pizzingrilli</u>, 343 F.3d 632, 643 (3d Cir. 2003) for the proposition that a state or governmental

agency can avoid liability under the Equal Protection Clause if it provides alternative voting

methods to individuals.  Defendants add that because the Board offered plaintiff a reasonably

alternative method by which to vote in November of 2003, plaintiff should not be permitted to

add this claim.  Moreover, defendants argue that permitting the new claim would prejudice the

defendants because there has been virtually no discovery on this matter to date.  Rather,

defendants suggest that plaintiff knew, or should have known when she first filed the complaint

that she had a potential claim for violation of the Equal Protection Clause. Permitting the

amendment at this time, defendants contend, would result in defendants having to expend

additional time and resources on their investigation and response.

     Defendants' arguments are insufficient to overcome this Court's presumption in favor of

permitting the amendment.  With respect to defendants argument that the proposed claim would

be futile, the Third Circuit has stated that an "[a]mendment of the complaint is futile if the

amendment will not cure the deficiency in the original complaint or if the amended complaint

NOT FOR PUBLICATION                                                    CLOSED

cannot withstand a renewed motion to dismiss." <u>Jablonski v. Pan American World Airways,</u>

<u>Inc.</u>, 863 F.2d 289, 292 (3d Cir.1988) (citations omitted).  Having not yet addressed the merits of

the plaintiff's claims, this Court cannot say that the plaintiff's equal protection claim is clearly

futile.  6 Wright & Miller, Federal Practice & Procedure § 1487 (2006) ("If a proposed

amendment is not clearly futile, then denial of leave to amend is improper.").  Nor have

defendants shown why this Court's permitting the amendment would unduly prejudice them,

given that scheduling order entered in this case on September 6, 2005 ordered that discovery be

completed by November 15, 2005.  Accordingly, plaintiff's motion for leave to amend the

complaint is granted.

## II.     Summary Judgment

Defendants argue that summary judgment in the plaintiff's favor at this stage would be

premature, given that defendants have not had adequate time for discovery.   Specifically,

defendants contend that the Magistrate Judge's April 8, 2005 Order, which referred the matter to

mediation, stayed the litigation, and as a result defendants have not been able to take the

plaintiff's deposition, depose or collect any evidence from non-party witnesses, or conduct a

medical examination of plaintiff or otherwise evaluate the nature of her damages.  (Schwartz

Cert. at ¶¶ 6-9.)  Defendants add, however, that there is sufficient evidence to grant the

defendants' motion for summary judgment.

The Court rejects the defendants' request to defer deciding the plaintiff's motion for

summary judgment.  A review of the Magistrate Judge's Order indicates that discovery was only

stayed for a period of "120 days" from the entry of the Order, which means the stay would have

NOT FOR PUBLICATION                                                    CLOSED

lasted until early August of 2005.  There is no indication in the record that the parties were

awarded an extension of the stay.  Moreover, the scheduling order issued on September 6, 2005,

indicated that "[d]iscovery shall conclude on November 15, 2005."  Defendants have now had

ample time to conduct discovery, and if any additional evidence was discovered that created a

genuine issue of material fact, defendants had a duty to present it to the Court rather than waiting

for a ruling.[1]  See 11 Wright & Miller, Federal Practice & Procedure § 2810.1 (2006) (party may

not bring to the court's attention evidence that could have been raised prior to the entry of

judgment).  The Court will consider the motions for summary judgment on their merits.

> A.     **Standard**

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary

judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the

non-movant and it is material if, under the substantive law, it would affect the outcome of the

suit.  See id. at 248.  The moving party must show that if the evidentiary material of record were

---

[1]The Court also notes that defendants' opposition to plaintiff's motion for summary
judgment is more appropriately fashioned as a motion for additional discovery under Fed. R. Civ.
P. 56(f).  To succeed on a motion under Rule 56(f), defendants would have needed to file an
affidavit identifying "with specificity what particular information is sought; how, if uncovered, it
would preclude summary judgment; and why it has not previously been obtained."  Bradley v.
U.S., 299 F.3d 197, 206-207 (3d Cir. 2002) (quoting St. Surin v. Virgin Islands Daily News,
Inc., 21 F.3d 1309, 1314 (3d Cir. 1994)).  Defendants here have not identified with specificity
what particular information is sought, or how, if uncovered, it would preclude summary
judgment.

NOT FOR PUBLICATION                                                      CLOSED

reduced to admissible evidence in court, it would be insufficient to permit the non-moving party

to carry its burden of proof. <u>See</u> <u>Celotex v. Catrett</u>, 477 U.S. 317, 318 (1986).

 Once the moving party has carried its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts in question."

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  To survive a

motion for summary judgment, a non-movant must present more than a mere scintilla of

evidence in his favor.  <u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 319 (3d Cir. 2005).  The

opposing party must set forth specific facts showing a genuine issue for trial and may not rest

upon the mere allegations or denials of its pleadings. <u>Shields v. Zuccarini</u>, 254 F.3d 476, 481 (3d

Cir. 2001).  At the summary judgment stage the court's function is not to weigh the evidence and

determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial. <u>See</u> <u>Anderson</u>, 477 U.S. at 249.  In doing so, the court must construe the facts and

inferences in the light most favorable to the non-moving party. <u>Curley v. Klem</u>, 298 F.3d 271,

277 (3d Cir. 2002).

 B. **Plaintiff's ADA Claim**

 Plaintiff first moves for summary judgment on its second claim, alleging that defendants

violated Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132.  Defendants

cross-move for summary judgment on the same claim.

 Plaintiff has alleged that by failing to make the Church Hall accessible to people with

disabilities, thereby effectively denying her right to vote, defendants violated Title II of the

Americans with Disabilities Act of 1990, which provides that: "no qualified individual with a

NOT FOR PUBLICATION                                                    CLOSED

disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132.  To state a claim under the ADA,

plaintiff must demonstrate that (1) she is a qualified individual with a disability; (2) she was

either excluded from participation in or denied the benefits of a public entity's services,

programs, or activities, or was otherwise discriminated against by the public entity; and (3) such

exclusion, denial of benefits, or discrimination was by reason of her disability.  See 42 U.S.C. §

12132.

> A "qualified individual with a disability" is
>
> an individual with a disability who, with or without reasonable modifications to
> rules, policies, or practices, the removal of architectural, communication, or
> transportation barriers, or the provision of auxiliary aids and services, meets the
> essential eligibility requirements for the receipt of services or the participation in
> programs or activities provided by a public entity.

42 U.S.C. § 12131(2).  Plaintiff has certified that she is confined to a wheelchair and unable to

walk.  (Meadows Cert. at ¶ 3.)  On election day, she weighed approximately 250 lbs and used a

motorized wheelchair weighing approximately 230 lbs.  Id.  Defendants admit that plaintiff was

registered to vote at the Church Hall on November 4, 2003, and have not offered any evidence to

suggest that plaintiff was not disabled.  Consequently, there is no genuine issue that plaintiff was

a qualified individual with a disability.  Nor is there any dispute that the Board of Elections is a

public entity, or that access to polling places constitutes a service, program, or activity.  See

People of New York ex rel. Spitzer v. County of Delaware, 82 F.Supp.2d 12, 17-18 (N.D.N.Y.

2000) (board of elections is a public entity).  The issue in this case is whether the plaintiff  "was

NOT FOR PUBLICATION                                               CLOSED

either excluded from participation in or denied the benefits of" the defendants' "services,

programs, or activities, or was otherwise discriminated against by" the defendants.

      Plaintiff's complaint alleges that defendants' choice of the Church Hall violated a number

of the implementing regulations of 42 U.S.C. § 12132, namely 28 C.F.R. §§ 35.130, 35.149,

35.150.[2]   Among those regulations, 28 C.F.R. §35.130(b)(4) provides:

> (4) A public entity may not, in determining the site or location of a facility, make
> selections –
>
> > (i) That have the effect of excluding individuals with disabilities from,
> > denying them the benefits of, or otherwise subjecting them to
> > discrimination; or
>
> > (ii) That have the purpose or effect of defeating or substantially impairing
> > the accomplishment of the objectives of the service, program, or activity
> > with respect to individuals with disabilities.

28 C.F.R. §35.130(b)(4).  Based on the facts of this case, the central question on this claim is

whether the defendants' selection of the Church Hall had the effect of substantially impairing the

plaintiff's right to vote.

      It is undisputed that plaintiff was assigned to vote at the Church Hall (PSUMF at ¶ 2;

DRSUMF at ¶ 2), and there is no genuine issue that she contacted the City Clerk of Bayonne

---

[2]"Congress gave the Attorney General the task of developing regulations to implement
Title II." Johnson v. City of Saline, 151 F.3d 564, 570 (6th Cir. 1998) (citing 42 U.S.C. §
12134(a)); see House Report at 52, 1990 U.S.C.C.A.N. at 475 ("Unlike the other titles in this
Act, title II does not list all of the forms of discrimination that the title is intended to prohibit.
Thus, the purpose of this section is to direct the Attorney General to issue regulations setting
forth the forms of discrimination prohibited."). "Because of this express delegation, these
regulations are entitled to 'controlling weight, unless they are arbitrary, capricious, or manifestly
contrary to the statute.' Johnson, 151 F.3d at 570 (quoting Chevron, U.S.A., Inc. v. Natural
Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984).

-10-

NOT FOR PUBLICATION                                                CLOSED

before the election to ensure that it was wheelchair-accessible.  (PSUMF at ¶ 5; DRSUMF at ¶

5.)  Nor is there any dispute that the sample ballot mailed to voters assigned to the Church Hall

indicated that the site was wheelchair-accessible.  (PSUMF at ¶4; DRSUMF at ¶ 4.)  When she

arrived at the Church Hall, however, plaintiff claims that she was unable to enter the polling

place to cast her ballot.  (Meadows Cert. at ¶6.)  Plaintiff returned home and contacted the board

of elections.  (Meadows Cert. at ¶ 7; DRSUMF at ¶ 7.)  They informed her that she would need

to obtain a court order to vote via absentee ballot at the polling center.  (PSUMF at ¶7; DCUF at

¶16.)  Plaintiff says she was given no assurance, however, that the place where she would need to

obtain a court order was wheelchair-accessible.  (Meadows Cert. at ¶ 7.)   By that time, it was

late in the day, after 7:00 pm, and claims she was exhausted from the day's activities.  (Meadows

Cert. at ¶ 7.)  As a consequence of the defendants' activities, plaintiff claims that she was unable

to vote.

        Defendants have asserted several defenses to the plaintiff's claim which they claim

requires summary judgment to be decided in their favor.

            1.      *Defendants did not intentionally or knowingly discriminate against the
                    plaintiff*

         Defendants first argue that there is no evidence to show that they intentionally or

knowingly acted in a way that would discriminate against or harm the plaintiff.  That defendants

may have lacked intent, however, is insufficient to escape liability under Title II.  "Title II applies

to action that carries a discriminatory effect, regardless of the government's motive or intent."

Herschaft v. New York Bd. of Elections, 2001 WL 940923, *2 (E.D.N.Y. 2001) (quoting

-11-

NOT FOR PUBLICATION                                                    CLOSED

Henrietta D. v. Giuliani, 119 F.Supp.2d 181, 206 (E.D.N.Y. 2000) (internal quotations omitted).

Defendants cannot escape liability under Title II by merely arguing that they lacked intent.

> 2.    *Defendants were excused from their obligation to make the polling place wheelchair-accessible*

Defendants also argue that they are immune from liability because they were granted a waiver by the New Jersey State Attorney General's office from the requirement that the voting place be made wheelchair-accessible.  Federal and state and law both provide certain exceptions to the requirement that all polling places be made accessible to elderly and physically disabled voters.  The Voting Accessibility for the Elderly and Handicapped Act of 1984, 42 U.S.C. § 1973ee-1 states in relevant part:

> (a) Accessibility to all polling places as responsibility of each political subdivision
>
> Within each State, except as provided in subsection (b) of this section, each political subdivision responsible for conducting elections shall assure that all polling places for Federal elections are accessible to handicapped...voters.
>
> (b) Exception
>
> Subsection (a) of this section shall not apply to a polling place–
>
> ...(2) if the chief election officer of the State–
>
> > (A) determines that all potential polling places have been surveyed and no such accessible place is available, nor is the political subdivision able to make one temporarily accessible, in the area involved; and
> >
> > (B) assures that any handicapped or elderly voter assigned to an inaccessible polling place, upon advance request of such voter (pursuant to procedures established by the chief election officer of the State)–
> >
> > > (i) will be assigned to an accessible polling place, or

-12-

NOT FOR PUBLICATION                                              CLOSED

> (ii) will be provided with an alternative means for casting a ballot
> on the day of the election.

42 U.S.C. § 1973ee-1.  N.J.S.A. 19:8-3.1 corresponds with 42 U.S.C. § 1973ee-1(b)(2)(A).

N.J.S.A. 19:8-3.1 provides, in relevant part:

> Each polling place selected by the county board of elections for use in any election
> shall be accessible to elderly and physically disabled voters unless: ...
>
> > b. the Attorney General grants a waiver based upon a determination that all
> > potential polling places have been surveyed and no accessible polling
> > place is available, nor is the municipality able to make one temporarily
> > accessible in or near the election district involved.

N.J.S.A. 19:8-3.1.  The next section of the New Jersey statute, N.J.S.A.  19:8-3.2, corresponds

with 42 U.S.C. § 1973ee-1(b)(2)(B), and provides in relevant part:

> The Attorney General shall establish in accordance with the "Administrative
> Procedure Act," P.L. 1968, c. 410 (C. 52:14B-1 et seq.), the rules and regulations
> necessary to insure that in any election any...physically disabled voter assigned to
> an inaccessible polling place will, upon advance request of that voter, either be
> permitted to vote at the alternative, accessible polling place nearest to that voter's
> residence which has a common ballot or be provided with a civilian absentee
> ballot, pursuant to section 4 of P.L. 1953, c. 211 (C. 19:57-4), as an alternative
> means of casting a ballot on the day of the election.

N.J.S.A. 19:8-3.2.  Moreover, defendants contend that under 28 C.F.R. § 35.130(b)(7), another

regulation promulgated under Title II of the ADA, defendants were only obligated to make

"reasonable modifications" to avoid discrimination.

The Court is aware that under certain circumstances, when the Attorney General of the

State of New Jersey has determined that no accessible polling place is available, polling places in

this state may obtain a waiver from the requirement that polling places be made accessible to

NOT FOR PUBLICATION                                                     CLOSED

physically disabled voters.  The parties do not dispute that the defendants obtained a waiver just

before the November 2003 election. (Latimer Cert. at Exh. H; PSUMF at ¶ 9; DRSUMF at ¶ 9.)

        Under most circumstances, defendants would be able to assert their waiver as justification

for dismissal of the plaintiff's case, *assuming* that the plaintiff had proper notice before the

election that the polling place to which she had been assigned was not wheelchair accessible.

That was not the case here.  The facts here are that the waiver was not granted until October 31,

2003 - a mere 5 days before the election. (Latimer Cert. at Exh. H; PSUMF at ¶ 9; DRSUMF at ¶

9.)  Plaintiff received a ballot before the election stating that the Church Hall was wheelchair-

accessible, and she claims that she contacted the Board of Elections to confirm that it was

wheelchair accessible.  However, when she arrived at the Church Hall on election day, she was

unable to gain access to cast her vote.  There is no way that plaintiff could have made an

"advance request" for alternative voting provisions, as called for under N.J.S.A. 19:8-3.2, when

the plaintiff did not have advance notice that she was assigned to a polling place that was not

wheelchair-accessible.  Under these circumstances, the defendants' receipt of a waiver does not

rebut the allegation that the plaintiff was discriminated against under Title II of the ADA.

        Defendants also assert that under 28 C.F.R. § 35.130(b)(7), they were only required to

make "reasonable modifications" to prevent discrimination, unless such "modifications would

fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7).

Defendants contend that there were no "reasonable modifications" that could have been taken.

Specifically, the contend that there was no way the Church Hall could have been made accessible

to disabled voters, and there were no other sites available for the November 2003 election.

-14-

(Klein Cert. at ¶¶ 10-12.).  According to defendants, the Attorney General's Office expressed

satisfaction with the Board's request by granting a waiver for the election.

      Plaintiff argues that there was a reasonable modification that could have been made - the

election could have been moved to the St. Henry's Parish Center across the street, which was

used for the June 2004 primary election and the November 2004 general election.  (PSUMF at

¶10).  They add that in submitting the waiver request, defendants left blank the answer to the

question "State your specific efforts to relocate this polling place to an accessible facility within

the district."  (PSUMF at ¶9).  Plaintiff's argument is insufficient, however, because there is no

evidence to suggest that the Parish Center was available for the November 2003 election.

      The Court is satisfied with defendants' argument that there were no reasonable

modifications that could have been made *to the Church Hall*.  The text of 28 C.F.R. §

35.130(b)(7), however, states that "A public entity shall make reasonable modifications in

*policies, practices,* or *procedures* when the modifications are necessary to avoid discrimination

on the basis of disability, unless the public entity can demonstrate that making the modifications

would fundamentally alter the nature of the service, program, or activity."   28 C.F.R. §

35.130(b)(7) (emphasis added).  The Court is not satisfied that there were no other modifications

that could have been made to the polices, practices, or procedures of the November 2003 election

to avoid discrimination against the plaintiff.  Such modifications would have been especially

necessary in this case, given that plaintiff was disabled, was informed twice before the election

that the polling place was wheelchair accessible, and then arrived on election day only to

discover that she could not gain access to the polling place.  Notably lacking from the

NOT FOR PUBLICATION                                                    CLOSED

defendants' argument is any effort on the part of the defendants to notify the plaintiff before the

election that the polling place was not wheelchair accessible.  Accordingly, defendants assertion

of a defense under 28 C.F.R. § 35.130(b)(7) is insufficient on this motion for summary judgment.

3.      *The availability to the plaintiff of alternative voting methods*

Defendants argue that plaintiff was not excluded because there was an alternative voting

method available to her.  (Klein Cert. at ¶ 15.)  Specifically, defendants state that the plaintiff

was advised on election day that she could obtain a court order that would permit her to vote in

person at the election via absentee ballot.  (Klein Cert. at ¶ 27.)

This Court is unaware of any cases in the Third Circuit or in the District of New Jersey

that have addressed the legitimacy of providing alternative voting methods to physically disabled

voters.  In the context of 28 C.F.R. § 35.130(b)(4), at least one case has interpreted that

regulation to mean that the mere availability of alternative voting procedures for the disabled is

insufficient.  In National Organization on Disability v. Tartaglione, 2001 U.S. Dist. Lexis 16731

(E.D.Pa 2001), plaintiffs, organizations who advocated for the disabled, membership

organizations of persons with disabilities, and disabled individuals, filed an action alleging that

the Commissioners of the City of Philadelphia in charge of elections and the purchase of voting

machines violated their civil rights under, *inter alia*, the ADA by denying them equal and

integrated access to polling places and accessible voting machines.  "The Complaint allege[d]

that Defendants regularly reassign[ed] polling places to new locations but [did] not require that

those new sites be accessible to voters with mobility impairments."  Id.  Defendants moved to

dismiss on the grounds that plaintiffs could not state a claim for violation of 28 C.F.R. §

NOT FOR PUBLICATION                                                    CLOSED

35.130(b)(4), because they had not been denied the benefit of voting due to the availability of

alternative ballots.  Tartaglione, 2001 U.S. Dist. Lexis 16731, at * 22.

      In its analysis, the District Court stated that plaintiffs did not "claim that they [had] been

discriminated against because they [could not] vote, but because they [could not] vote *in the*

*same manner* as non-disabled voters."  Tartaglione, 2001 U.S. Dist. Lexis 16731, at * 22

(emphasis added).  In denying the defendants' motion to dismiss, the Court noted that

"Defendants' selection of inaccessible polling places... can have the effect of depriving mobility

impaired voters of the benefit of voting in their neighborhood polling places in the same manner

as non-disabled voters, in violation of 28 C.F.R. § 35.130(b)(4)."  Id. at 22-23 (emphasis added).

      The implication of the Court's reasoning in Tartaglione is that had the plaintiffs alleged

that they were unable to vote (as opposed to alleging that they were unable to vote in the same

manner as fellow citizens), their claim would fail because there were alternative ballots available

to the voters.  A careful review of the plaintiff's complaint in this case shows that the plaintiff *is*

alleging that she was unable to vote, not that she was unable to vote in the same manner as fellow

citizens.[3]  ( "Plaintiff...was denied the right to vote in the November 4, 2003 election...."

(Complaint at ¶ 1); "Plaintiff was unable to vote in the November 4, 2003 election."  (Complaint

---

[3]Although the plaintiff now attempts to adopt the argument of Tartaglione, by arguing
that the selection of the Church Hall by "the defendants had the effect of excluding Ms.
Meadows from voting in the same manner as non disabled voters," (Pl's Motion at p. 12), the
Court is constrained to follow the claims made in the plaintiff's complaint, that she was denied
the right to vote. See Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff
may not amend his complaint through arguments in his brief in opposition to a motion for
summary judgment.").

NOT FOR PUBLICATION                                                        CLOSED

at ¶ 17); "The denial of the right to vote as alleged excluded plaintiff from participation in the

election of 2003 in violation of the 42 U.S.C. § 12132."  (Complaint at ¶ 22.))

   Drawing a simple analogy between the two cases might lead one to the conclusion that

Meadow's claim fails in this case because she has alleged that she was unable to vote, and

because defendants offered evidence to suggest that an alternative method of voting was

available to her.  The specific facts of this case lead this Court to a different conclusion, however.

Here, defendants selected a polling place that was not wheelchair accessible, the plaintiff was

informed before the election that it was wheelchair-accessible and was given no reason to believe

otherwise, but plaintiff was unable to gain access when she came to vote.  Plaintiff returned

home, contacted the Board of Elections, and then was instructed to go to the County

Administration building to obtain a court order that would have permitted her to vote in person

via absentee ballot.  She did not exercise this option, however, because it was late in the evening

on election date and because she was given no assurance that the County Administration building

was wheelchair accessible.  In Tartaglione, by contrast, it appears that the disabled voters did

have advance notice that their neighborhood polling centers were not wheelchair accessible, and

as a result, were forced to vote by absentee ballot or by alternative ballot.  Under those

circumstances, the District Court's dicta suggests that the plaintiffs could not have alleged that

they were denied the right to vote because there were alternative voting methods available to

them before the election, which was not the case here.  Accordingly, neither Tartaglione nor any

NOT FOR PUBLICATION                                                CLOSED

of the other cases cited by the parties are sufficiently analogous to this case as to be persuasive.[4]

Because the plaintiff did not have advance notice that the Church Hall was not wheelchair

accessible, defendants cannot now escape liability by arguing that there were alternative voting

methods available to the plaintiff.

        4.     *The plaintiff has no remedy under the ADA*

Last, defendants argue that even if the plaintiff were to succeed on liability under the

ADA, she would not be entitled to any damages for her claims.  Plaintiff's complaint requests an

award of compensatory damages, costs and reasonable attorneys' fees.

Title II of the ADA does not explicitly specify "when a monetary recovery may be had."

Garcia v. State Univ. of N.Y. Health Scis. Ctr., 280 F.3d 98, 110-11 (2d Cir. 2001).  "Instead,

Title II simply incorporates the remedial scheme of the Rehabilitation Act of 1973, see 29 U.S.C.

§ 794a(a)(2) (incorporated into Title II by 42 U.S.C. § 12133), which in turn incorporates the

remedial scheme of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et seq."  Id. at

111 (citing Ferguson v. City of Phoenix, 157 F.3d 668, 673 (9th Cir. 1998).  "[B]y referencing

_____

      [4]Defendants cite NAACP v. Philadelphia Board of Elections, 1998 U.S. Dist. Lexis 8861,
1998 WL 321253 (E.D. Pa. 1998) as a case that supports their argument concerning the
availability of alternative ballots.  The issue there, however, was whether the City of Philadelphia
could use its alternative ballot procedures, promulgated to comply with the  [Voting Accessibility
of the Elderly and Handicapped Act of 1984 (the "VAEH")], in state and local elections. That is
not the issue in this case.
      Another case cited by defendants, American Association of People with Disabilities v.
Shelley, 324 F. Supp. 2d 1120 (C.D. Ca. 2004), is also inapplicable. That case concerned whether
the plaintiffs, who sought a preliminary injunction, made a sufficient showing that the
elimination of a proposed electronic voting machine would have a discriminatory effect on
certain disabled voters.

Title VI's remedial scheme, Title II (and §504 of the Rehabilitation Act) incorporates an implied

private right of action."  Id.

       While the Third Circuit has yet to address the issue of what damages are available under

Title II of the ADA, all other circuits addressing the issue have held that compensatory damages

are unavailable absent a showing of intentional discrimination. See Ferguson v. City of Phoenix,

157 F.3d 668, 674 (9th Cir.1998); Wood v. President and Trs. of Spring Hill College, 978 F.2d

1214 (11th Cir.1992); Carter v. Orleans Parish Pub. Schs., 725 F.2d 261 (5th Cir.1984).  The

three District Courts in the Third Circuit that have considered the issue have reached the same

conclusion. See Bowers v. NCAA, No. Civ. A. 97-2600, 2001 WL 1850089, at *2 (D.N.J. Feb.6,

2001); Adelman v. Dunmire, No. Civ. A. 95-4039, 1996 WL 107853, at *4 (E.D.Pa. Mar.12,

1996) (citing Tafoya v. Bobroff, 865 F.Supp. 742, 748 (D.N.M.1994)); Douris v. Bucks County

Office of Dist. Attorney, 2004 WL 1529169, at *5 n. 7 (E.D. Pa. 2004), aff'd 150 Fed. Appx. 113

(3d Cir. 2005).  This Court sees no reason to reach a different conclusion.  To have a claim for

money damages, the plaintiff must have alleged intentional discrimination.

       Plaintiff has only alleged in her complaint that defendants "discriminated against her on

the basis of her disability in violation of Title II of the [ADA]."  (Complaint at ¶ 1).  Nowhere in

the complaint is the word "intentional" used.  Moreover, defendants' selection of the Church Hall

for the elections was a facially neutral action.  See Alexander v. Choate, 469 U.S. 287, 302

(1985) (describing neutral policies as those that do not distinguish on the basis of any test,

judgment, or trait that the handicapped as a class are less capable of meeting or less likely of

having).  Even construing the complaint in the light most favorable to the plaintiff, the

-20-

NOT FOR PUBLICATION                                                            CLOSED

allegations can be seen as nothing more than a disparate impact claim that does not allege

intentional discrimination.  See Bowers v. NCAA, 118 F.Supp.2d 494, 507-08 (D.N.J. 2000) ("A

disparate impact claim is one that challenges a facially neutral policy because the burdens of that

policy are borne disproportionately by a particular class of people.") (citations omitted).  Because

plaintiff has failed to allege intentional discrimination, she is not entitled to compensatory

damages under the ADA.  Plaintiff has not prayed for any other form of relief.  Accordingly,

plaintiff's motion for summary judgment on the ADA claim is denied, and defendants' cross-

motion on the same is granted.

### C.       Plaintiff's Rehabilitation Act Claim

Plaintiff's first claim alleges that "the denial of the right to vote as alleged discriminated

against plaintiff and excluded her from participating in the 2003 election in violation of §504 of

the Rehabilitation Act, 29 U.S.C. § 794(a)."  (Complaint at ¶20.)  The elements required to prove

a claim under the Rehabilitation Act are the same as the elements required to make a *prima facie*

showing under the ADA, except the Rehabilitation Act contains an additional requirement that

the defendant receive federal financial assistance.  Jeremy H. v. Mount Lebanon Sch. Dist., 95

F.3d 272, 279 (3d Cir.1996).  Cases interpreting the ADA and Rehabilitation Act are

interchangeable.  See Cash v. Smith, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000) (citation omitted).

"Compensatory damages are available under section 504 of the Rehabilitation Act only in cases

where intentional discrimination is alleged."  Bowers, 118 F.Supp.2d at 504.

Plaintiff's claim under the Rehabilitation Act fails for the same reasons that it fails under the ADA – the failure to allege intentional discrimination.  Defendants motion for summary judgment on plaintiff's first claim is granted.

### D.   Plaintiff's Equal Protection Claim

Plaintiff alleges that defendants violated her rights under the Fourteenth Amendment's Equal Protection Clause by selecting a non-accessible polling place for the November 2003 election.  The Third Circuit has left unresolved the "difficult constitutional question [of] whether to imply a fourteenth amendment remedy in damages...."  Gagliardi v. Flint, 564 F.2d 112, 116 (3d Cir. 1977).  The Circuit has also stated that "the existence of an effective and substantial federal statutory remedy for [a] plaintiff[] obviates the need to imply a constitutional remedy on the plaintiff['s] behalf."  Mahone v. Waddle, 564 F.2d 1018, 1024 (3d Cir. 1977) (referring to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 407-11 (1971) (Harlan, J., concurring)).  Such a remedy exists for the plaintiff in this case in the form of 42 U.S.C. § 1983, which provides a remedy for conduct committed by a person acting under color of state law that deprived the plaintiff of rights, privileges, or immunities secured by the laws or Constitution of the United States.  See Hassoun v. Cimmino, 126 F.Supp.2d 353, 361 (D.N.J. 2000) (specifying the specific components of section 1983 actions) (citations omitted).

Although plaintiff's complaint does not assert a claim under section 1983, this Court nevertheless holds that the plaintiff is not permitted to assert a claim directly under the Fourteenth Amendment when there exists a valid statutory remedy that the plaintiff could have employed to assert her equal protection rights.  See Ward v. Calk, 650 F.2d 1144, 1147 (9th Cir.

NOT FOR PUBLICATION                                                CLOSED

1981) (precluding direct suit under the Fourteenth Amendment and other amendments where

defendant was amenable to suit under 42 U.S.C. §1983, notwithstanding fact that plaintiff failed

to avail himself of section 1983).  This holding is compelled in part by the need for judicial

restraint, to avoid facing the "difficult constitutional question [of] whether to imply a fourteenth

amendment remedy in damages...."  See Hassoun, 126 F.Supp.2d at 364 (judicial restraint

requires courts to avoid deciding constitutional questions in advance of the necessity to decide

them) (quoting Gagliardi, 564 F.2d at 116).  Because a valid statutory remedy exists for the

plaintiff, defendants' cross-motion for summary judgment on the plaintiff's equal protection

claim is granted.

### E.        Plaintiff's Remaining Claims

Defendants have moved for summary judgment on the plaintiff's remaining state law

claims, counts three through six in the plaintiff's complaint.  Although defendants have asserted

general defenses to the claims, defendants have not offered any supporting argument to show

why judgment should be granted in their favor on each of the state law claims. For this reason,

the defendants' motion for summary judgment on counts three, four, five and six are denied.

Because summary judgment has been granted for the defendants on all of the plaintiff's

federal claims, the Court declines to exercise jurisdiction over the remaining state law claims.

Those matters should be heard and decided in New Jersey Superior Court.  Plaintiff may, if she

elects to do so, refile her state law claims in state court.

**NOT FOR PUBLICATION**                                    **CLOSED**

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgments on claims two and seven are granted, and plaintiff's motion for summary judgment on the same are denied. Defendants' motion for summary judgment is also granted as to the first claim, and is denied as to claims three, four, five and six.  The Court declines to exercise jurisdiction over the remaining state law claims, but plaintiff may refile in state court if she elects to do so.


**s/William H. Walls**
United States Senior District Judge